UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                                        :
In re:                                                                  :   SIPA LIQUIDATION
                                                                        :
BERNARD L. MADOFF INVESTMENT SECURITIES                                 :   Civil Action No. 08 CV 10791
LLC,                                                                    :
                                                                        :
                    Debtor.                                             :
                                                                        :
IRVING H. PICARD, Trustee for the Liquidation of                        :   Adv. Pro. No. <u>09-01305 (BRL)</u>
Bernard L. Madoff Investment Securities LLC,                            :
                                                                        :
                    Plaintiff,                                          :
                                                                        :
    - against -                                                         :
                                                                        :
                                                                        :
COHMAD SECURITIES CORPORATION, et al.,                                  :
                                                                        :
                    Defendants.                                         :
------------------------------------------------------------------------x

**DEFENDANT ROBERT M. JAFFE'S JOINDER IN COHMAD SECURITIES
CORPORATION'S MOTION FOR WITHDRAWAL OF THE DISTRICT COURT'S
REFERENCE TO BANKRUPTCY COURT**

Defendant Robert M. Jaffe hereby joins Cohmad Securities Corporation's motion under 28 U.S.C. § 157(d) for withdrawal of the reference of the above-captioned adversary proceeding brought by Trustee Irving Picard (the "Trustee") to Bankruptcy Court for the reasons stated in Cohmad's moving papers and those set forth below.  Currently pending in the Southern District of New York is an action against Jaffe and others brought by the Securities and Exchange Commission ("SEC").  The Trustee operates under the "substantial supervision of . . . the SEC." *SIPC v. Barbour*, 421 U.S. 412, 420 (1975); *see also, e.g.,* 15 USC § 78ccc(a)(2)(B).

In this matter, two federal regulators – the Trustee and the SEC – have each brought an action against Robert Jaffe to recover the very same monies from him, monies that Bernard Madoff's bankrupt firm sent Jaffe as gains in a brokerage account.  With two regulators from the same sovereign vying for the same pot of money from the same person with virtually the same factual and legal issues, basic precepts of judicial economy and fairness demand that the cases be litigated in the same tribunal at the same time.

There can be no serious question that, as a matter of judicial economy, these cases should only be litigated one time.  In bringing the lawsuits, the two regulators worked together, shared information with each other, and sued Jaffe on the same day.  Their respective complaints are based on the same facts, are drawn from the same records and, indeed, use virtually identical language in places.[1]  The two regulators are even seeking to vindicate the rights of the same group of people, those who had accounts with Madoff.  All that is different is the labels:  the victims are described as "creditors" by the Trustee and "investors" by the SEC.

---

[1]  A chart is annexed as Appendix A showing the similarities in allegations relating to Jaffe. While there may be nothing inherently improper about two regulators using identical phrasing, these similarities demonstrate vividly why the two cases should not be litigated separately.

1

Moreover, the two cases are defined by the same set of issues:

<u>First</u>, in each case, the factfinder will need to determine what Jaffe knew about Madoff's Ponzi scheme. This will be litigated as "fraudulent intent" in the securities case, and as "good faith" in the bankruptcy case.

<u>Second</u>, in each case, the factfinder will need to determine what Jaffe did when people sought introductions to Madoff from him. This will be litigated in the context of whether Jaffe engaged in "deceptive conduct" in the securities case, and whether he performed services that were not "for value" in the bankruptcy case.

<u>Third</u>, in each case, the factfinder must determine (a) what monies Madoff sent to Jaffe, how much, when, and why, and (b) whether Jaffe must return any of it, and, if so, to whom. The SEC wants the same money back as "disgorgement" that the Trustee wants as an "avoidable transfer."

Under these circumstances, the risks of inconsistent governmental theories, inconsistent verdicts, and rival claims of entitlement (by the same government) all compel the conclusion that only one of these cases should proceed. *See, e.g., Adelphia Recovery Trust v. Prestige Communs. of N.C., Inc.*, 2008 U.S. Dist. LEXIS 1786, * 21-22 (S.D.N.Y. Jan. 8, 2008) ("risk of conflicting decisions"); *Boudle v. CMI Network, Inc.*, 2007 U.S. Dist. LEXIS 82336, *19 (E.D.N.Y. Nov. 6, 2007) ("operative facts . . . identical"); *In re Adelphia Comm. Corp. Secs. and Deriv. Litig.*, 2006 WL 337667, * 5 (S.D.N.Y. Feb. 10, 2006) (duplicative discovery and unfair cost to defense); *Breeden v. Sphere Drake Ins. P.L.C.*, 258 B.R. 67, 77 (Bankr. N.D.N.Y. 2000) ("possibility that the two courts might reach opposite conclusions"); *In re Wedtech Corp.*, 81 B.R. 237, 239 (S.D.N.Y. 1987) ("fairness" and "judicial economy"); *In re Enviro-Scope Corp.*, 57 B.R. 1005, 1007-08 (E.D. Pa. 1985) (better for single judge to administer disgorgement).

In addition, permitting the government to litigate this case twice against Jaffe is fundamentally unfair.  *See Adelphia*, 2006 WL 337667 at * 5; *Wedtech*, 81 B.R. at 239.  It will impose much more significant economic burden on him, it will require him to publicly defend against serious allegations of fraud on more than one occasion, and it effectively gives the government two bites at the apple for no legitimate reason.  For this independent reason, the reference to Bankruptcy should be withdrawn.

## CONCLUSION

For the reasons set forth above and in Cohmad's motion, Defendant Jaffe respectfully requests an order withdrawing the reference of this case to Bankruptcy Court.

Dated: New York, NY
       August 21, 2009

                              ARKIN KAPLAN RICE LLP


                              By: */s/ Stanley S. Arkin*
                                    Stanley S. Arkin (# 1373)
                                    Howard J. Kaplan (#4492)
                                    Peter B. Pope (# 4626)
                                    David M. Pohl (# 8609)
                              590 Madison Avenue
                              New York, NY  10022
                              (212) 333-0226 Telephone

                              *Attorneys for Defendant Robert M. Jaffe*

**APPENDIX**

| Issue | SEC Complaint | Trustee Complaint |
|---|---|---|
| Madoff's "Aura" | Madoff "cultivated an aura of success and secrecy." ¶ 23.<br><br>"[M]any of BMIS's victims felt privileged to be allowed to invest with Madoff." ¶ 24. | Madoff "wrapp[ed] himself in a Wizard of Oz-like aura." ¶ 56.<br><br>"[M]any of BLMIS' victims felt privileged to be allowed to invest with Madoff." ¶ 56. |
| Jaffe's Role | "[P]articipating in Bernard L. Madoff's Ponzi scheme by raising billions of dollars from hundreds of investors." ¶ 1.<br><br>"[P]art of Madoff's marketing team and responsible for bringing in over $1 billion into BMIS," ¶ 58, from the "tony Palm Beach area," ¶ 59. | "[P]articipation in and aiding of the massive Ponzi scheme perpetrated by Bernard L. Madoff," and, along with others, "divert[ing] several billion dollars to Madoff." ¶ 1.<br><br>"Jaffe's job [was] recruiting high-net-worth investors" from Palm Beach Country Club. ¶ 54. |
| Jaffe's Scienter | "[K]new or recklessly disregarded facts that indicated Madoff was engaging in securities fraud." ¶ 7. | "[K]new or should have known" that BLMIS activities "were predicated on fraud." ¶ 24. |
| Jaffe's Marriage | "[T]he son-in-law of one of Madoff's largest and earliest investors." ¶32. | "[M]arried to . . . the daughter of . . . one of BLMIS' earliest and largest investors." ¶ 52. |
| How Jaffe Benefited From Madoff's Scheme | Jaffe was compensated by Madoff "through his personal BMIS accounts." ¶ 60. | The Cohmad Representatives obtained money "through [accounts] in their own name at BLMIS." ¶ 45. |
| Madoff/Cohmad Relationship | Cohmad and BMIS were "intertwined." ¶30. | BLMIS and Cohmad were "intertwined." ¶95. |